Good morning. My name is Robert O'Regan, appearing on behalf of Lisa D'Amore. My name is still Robert O'Regan, representing Lisa D'Amore, appellant in this case. May I, with the Court's permission, reserve three minutes for rebuttal? You may. May I please the Court, this case comes before you on a question, really, of whether separate parts of a custodial agreement for an IRA account are to be given effect and how, and whether the entirety of that same agreement are to be given effect and how. The law governing this contract is the State of Illinois. The law in Illinois requires that all terms in a contract be given effect and that reconciliation of those terms be made when the contract is interpreted. Our position before you today is that reconciliation of all terms in the contract was not made below, and so we seek an order that the decision bill be vacated and an order be entered for dismissal of the case. And here's why. This case, this is the second appeal to this Court. This case comes, again, but on a much narrower question, and that is whether a form submitted by the decedent, who was the depositor on the IRA account, was or was not a request for a total transfer of the IRA account from Mesero Financial, the brokerage management company that was the manager of the fund, and if it was, what was the effect? Our position, frankly, is that because of the relationship, particularly among Articles 11, which governs termination of the custodial arrangement, Article 4, which governs when, whether, and how distributions are to be made, and Article 7, which is a mandatory tax savings clause in the agreement, whether there be operation of all of those provisions in this agreement. Upon the death of Peter Cooper, the depositor of the account, our client, Lisa DeMori, was entitled to and did properly receive distribution of the account balance as it stood at the time of death. If I understand your position, it is simply that, yes, he sought to terminate, and then when he was told that some of the assets could not be transferred because of the particular form they took, that when he did nothing thereafter, that with the information he had from the company, it was clear that the representation continued, and that nothing had changed. I guess that's the number, one should argue. That's essentially correct, but the nuances to it are this. Peter Cooper, and it's not contested, was a highly sophisticated, very successful investor. He worked for Messereau. He knew, and it's not contested, that many of the assets in the account in question could not be automatically transferred upon the designation in a new account. He knew that. It's not contested. And he knew, I assume he had to know, that if they sold them, the funds could then be transferred. And he did. Now, what I point the court to is the record in the case is that there was a reconciliation period. The acronym is ACATS, Automatic Customer Account Transfer System. The form submitted tracks an ACATS form, and there were, I call the court's attention, two provisions of that form. One is a checkmark, I want you to transfer everything. And then another clause says, but if they're not electronically or automatically transferred, I want you to sell it, convert it to cash, and transfer the cash. That provision of the document was left unsigned by the decedent. And it is unquestioned that he knew assets in the account did not qualify. Under Illinois law, when this account was formed, the law requires that the facts known at the time of the formation to be taken into account. We submit the fact that Peter Cooper knew there were assets that could not be automatically transferred, precluded the judge below from making any finding that the document that was prepared constituted a transfer order for the entire account, so that it would be automatically terminated. I'm puzzled as to why we even need to get into all of this. As I understand it, the moment that he died, there were still funds that the custodian was holding, as a matter of fact. Yes, Your Honor. And seven years before he signed his custodial agreement, he'd signed a beneficiary designation form that left the funds to a client. Yes, Your Honor. And as I understand it, even if the account terminated, the custodian was to have the powers to do an orderly liquidation and distribution of the assets. And that's what Article 11 specifically states. So what was the custodian to do at that point, other than to distribute whatever assets the custodian was holding to the designated beneficiary? And that's the question we asked below, and her answer was... I guess the district court presumed somehow that the beneficiary designation form itself dissolved when he asked the funds to be transferred. And I'm getting a shaking head from counsel over there who'll get a chance to say that. Well, and that's why I said, Your Honor, that the point of the decision here is whether we give independent effect to separate terms and effect to the entirety of the agreement. So what precisely is the best argument you would advance for why the request to transfer, even if it put in motion and constituted a termination of account with the custodian's reserved rights upon termination, why that would not dissolve or terminate the beneficiary designation? Because Article 4 specifically provides what is to happen upon termination of the account. Article 11 specifically provides that upon termination of the account, Article 4 on distribution is to govern. Article 4, and this is not contested, incorporated the beneficiary designation form when this account was opened, which was Elisa D'Amore. The LE's contention is that the form to transfer the account is what treated so-called termination of the account and ended the beneficiary designation. But the beneficiary designation is part of the overall custodial agreement. As the document makes clear, this is a tax-planning, tax-motivated arrangement. In order for it to maintain its tax-advantaged status, a beneficiary designation is required. And so Article 4 sets out what is to happen upon termination, if we agree that it terminates, which I don't, in the event that at the time of termination the depositor is dead, and the answer is it goes to the beneficiary in that form. And that is our argument. Am I correct? Put to one side the difficult situation of divorce. You just have a married couple, and one of them opens one of these accounts, and sometimes they want to write down my estate as the beneficiary, but other times for tax purposes they write down actually their spouse's name as the beneficiary. If we follow the district court's logic here, should in that situation the spouse who opened the account ask to terminate all the assets because he's going to put them in another account where his spouse will also be named as the beneficiary, but he dies between A and B, then if I understand the district courts, all this money would have to go to the estate rather than the spouse. And that is contrary to the terms of the custodial agreement because the second sentence in Article 11A identifies that upon death or termination it is to go to the beneficiary designated under Article 4 or to the depositor if he designates. Now in this instance if the depositor had designated his estate in an amendment between 2003 and the time of his death, it could go to his estate, but he didn't. I'm not sure which is the cleaner route to you, if either works, but just stepping back a second, the custodial agreement termination provision is tied to a request for termination of all the assets, is that right? Yes, Your Honor. Just so I'm crystal clear, your contention is no such request was ever made? Yes, Your Honor, because the form that was completed, known to the depositor, did not request a transfer of all of the assets, so it couldn't have been a total transfer request. Because the custodial agreement doesn't say when you request a total transfer, it says when you request a transfer of all the assets. The language is written direction to the custodian to transfer all assets of the custodial account to a successor trustee. Your simple point is that never happened. Yes, Your Honor. So since that never happened, you never get to anything else, so you don't actually have to get to construing all the different provisions of the thing, because the triggering event that would put those other provisions in play just never happens, as if he never sent anything. Correct. That's our position. And then even if the court were to give some credence to that, the terms of the contract, as its entirety, still prevail. Wouldn't it make, I guess, one way to think about it, you tell me this is wrong, you'll probably say it's right because it helps you, but all the other provisions, the tax consequences, all those things, seem to push in the direction of construing relatively strictly what constitutes a request for a transfer of all assets. Because if you require the person to be quite clear in requesting that everything get out of that account, all the problems go away. It's only when there's some residuum in there that some of these complications occur. So every one of the arguments you make about why, even if it was a request to transfer, doesn't matter, could be reframed as an argument for explaining why we should construe strictly what constitutes a request to transfer all the assets. Frankly, Your Honor, I think the document itself requires such a strict construction because of the tax savings clause. As we discussed in our brief, there's so much interrelationship that the purpose of this to pass on or to receive the funds upon qualification for retirement are paramount to the instrument. So Article 7 requires that the agreement will be amended to make a point to the tax clause. They may say that these are all bad arguments, but even if they are good arguments, they have a separate defect, which is that they were not made before the motion to reconsider. I believe, if Your Honor looks at the record in the first summary judgment and our arguments in the second summary judgment, that all of these arguments were made in this. In the opposition to the motion to summary judgment, they moved for summary judgment on the ground that there was a termination request because of the total transfer request. In your opposition to the motion for summary judgment, did you contest that? We did, and we also renewed our motion for summary judgment. I know that. In contesting it, did you make the arguments you're making now? Yes, these are arguments we've consistently made through the life of the case. So when I look at your opposition to the motion for summary judgment, I'll see all these arguments? Yes, Your Honor. And you will see we incorporated our first summary judgment papers in our renewed motion, because all of these arguments, particularly that the transfer request didn't terminate, go back to the beginning of the case for us. I see my time is up. Thank you for your attention. May it please the Court. In answer to Your Honor's question about what would happen upon the death of Mr. Cooper and where the assets go in the absence of a beneficiary, it would go to his estate. Taking a step back and where... Would you explain to me why that would be? You have a written designation, which has been in effect for a long time, and two years after he made the request to transfer, by what operation does that beneficiary go away that would protect the custodian who then turns and sends it to the estate? Sure. Let's be clear. The only claim of right that they have to these assets is from this beneficiary designation that was in the agreement. That's a pretty good claim. Except that the agreement under which it applies from was terminated by operation of the express terms of the agreement. Except, because this is an area that if you do not have assets which are transferable electronically, you have to tell the custodian, sell those assets, and then transfer them as cash. That wasn't done here by a highly sophisticated individual. This is not your average customer. This is somebody who worked for the company, who had a relatively big job, and as I looked at the record, he was going to start a hedge fund, so he's not your average customer. He had to know that if he didn't make a further step, that the assets then were going to be controlled by the company which had been controlling him, his former employer, and he had a designated beneficiary. Okay. That assumption, Your Honor, first of all, the question that comes into that, you're assuming that you accept the argument that he knew, and this is what he intended to do, that he always knew these assets were going to stay behind and that they were going to be treated in the manner that the appellant argues. But if you look in the larger context of the case, and it may not have worked its way into the final decision of the court, but in the larger context of the case, and there's a timeline, that after his divorce, he was divorced in, well, at the time that they got married was in 2003, and that's the time that this agreement and the designation of beneficiary happened. Three years later, he gets divorced. In the Merrill settlement agreement, there was a distribution of assets, and I know that issue is out of the case. I agree about all of that. And at that point, he could have theoretically gone to Meserov and said, give me a change of beneficiary form, I'm going to change the beneficiary to whatever. He didn't do that.  In the actual documents, in appendix 927, it says, transfer funds from a brokerage plant, and he had two options. Either this is a total transfer from the brokerage account, which is what he checked, or the box directly below it says, this is a partial transfer, only transfer the assets below. So if you accept the argument that they say that he was super sophisticated and he understood there were some assets that weren't going to go, he would have included that here. This is a partial transfer. And he made it clear that there were going to be, and he understood there were assets. But that's not what the plain language of this document says. I'll accept that for a moment. Except that he was told that all the assets didn't transfer because they were not transferable. But in their current form. Okay, so on that, and I refer you to appendix 546 and 547, Meserov certainly thought they were transferred out. And they certainly, and the, the, the, I don't know, they thought there had been a request, but they, but, but they, they told them that they were reinstating it because they hadn't all been transferred out. And 547 to the appendix, and this is an internal email between Celeste Reed and Wendy Brooks from Meserov. They identified the list of certain accounts that they had indicated were below the minimum. And Ms. Reed writes back to Wendy Brooks. Hey there, any thoughts on just re-opening the account with your rep code EX13? She uses the word re-open. So that indicates that Meserov understood the account was closed and that they were following the direction of Peter Cooper to transfer all the assets to a TD Ameritrade account where the only beneficiary listed in that account was his mother. Just so I understand something, just, if I can just ask a couple questions just to clarify. If I request that, if I send a letter saying, please transfer all transferable assets, does that terminate the agreement? Transfer all transferable assets? No, there's a distinction. Okay, so, so, I get it, I get it, I agree with you, it does not. Right, it does not. So how is the request here different than that? Because it doesn't say, the request here, and this is a form that was put together, so you assume the parties understood it as sophisticated as they argued that Mr. Cooper was. Well, certainly Meserov was as sophisticated as Peter Cooper was. And the language that they used in this form, in the contract, which governs their agreement, says transfer, a total transfer from the brokerage account. Not a total transfer, except for those assets which aren't transferable because I'm sophisticated and I know it's not. But under the way this thing works, when you make that request, what happens if there turn out to be non-transferable assets? Then that's where all the arguments that they make in their brief relate to what happens after the transfer. They have the FINRA rule, they have the tax counselors, and all they say is that once the transfer order of all assets was given, the agreement terminates. But post-termination, there are still... That's not what they say, and forget whether it terminates or not. I'm just trying to figure out, if I make a request for a total transfer, and there are non-transferable assets in there, what happens? What does the account say back to the account holder? Well, the account would... Well, what they did here is they reopened the account, and they put the account back in, or they put the assets back into the account that they had closed, that they reopened for this purpose. But then, the other interesting thing, and it relates to this, is when they were sending the account statements, Mesereau understood that there was no beneficiary of this account. That's fine. There's non-transferable assets. Potentially. In this case, it turns out that there were. When there are non-transferable assets, what does the account, what does the Mesereau say back to the account holder? So what happens is they come back to the... And this is interesting. It comes back to the custodian. It doesn't say come back to the custodian back into the exact same account that had just been terminated. The custodian comes back, and now they need to deal with that. And what they decided to do, wrongly we suggest, and this is a separate issue, not part of this case, is that Mesereau decided to reopen the account that had been closed as a place to hold those funds. And that's what they emailed and just referred to you about, because they didn't know what to do. Your opposing counsel, I thought, said that there was a separate box, and I thought the record shows that there would be a box that you would be asked to check if you would like the non-transferable assets converted into a form that would make them transferable too. Well, the fact that he didn't transfer that indicates, or the fact that he didn't sign that, indicates that he had, the assumption and logic is that he knew that there were certain assets that weren't transferable. I don't know that that's established in the record, and the district court certainly didn't find that. What the district court found... You're just jumping ahead. Does that happen under the process? In other words, I make a request for a total transfer. Does Mesereau then come back to the account holder and say, would you like to have your non-transferable assets converted to a form so that they may be transferred? They could do that. Did that happen here? Does that happen under the form? Because he says there's a box that you'd have to check to make that happen. I believe he's referring to the second page of the agreement. But the point is... So is that a yes? I don't think we even get to that. No, I don't think it does, but I don't think you need to get to that. Forget whether you think I need to get to it. If I'd like to get to it, does that box... Is there such a box? It says, if the fund... And this is on the second page, it's appendix 928. It says, if the fund is unable to be held by TD Ameritrade, I authorize a transfer to Liquidity and transfer on cash, and then there's a... So that's right there on the form, but he never checked that. Right. So that doesn't... I guess that seems to support the idea that, with respect to some assets in the account, he did not request their transfer. No. No, it doesn't. Okay. Why not? That box, that's what's throwing me off. So why is that box not a problem page? Because when he says that there's a total transfer, and the agreement says this agreement terminates if all the assets are directed out. Now, he directs the assets out. What you're talking about, what that box talks about, is that despite his instruction to transfer all the assets out, if, after the fact, it turns out that some of those can't come out, which has nothing to do with whether or not he's indicating his intent to terminate the agreement, but if those assets come back, or they can't be transferred out, then what do you do with them? Do you liquidate them? Well, you could do that. Or do you continue to hold them, which is what Mesereau did. But the problem with what Mesereau did here is that they held them and put them... reopened an account that had been terminated and held them in an account that had been terminated, but they knew, because you can see the account statements in this account that they reopened, they had to re-designate the person in charge of the account for commission purposes. They had to, when they issued the statements to Peter Cooper, they indicated that there was no beneficiary. Did they give it a new number? No, that was the thing. They kept the same number because they didn't know what to do with it. And the account, and what we're talking about here, when they said there was no beneficiary listed, is there a form which Peter Cooper received every month when he got his statement which says no beneficiary? Correct. Every account statement that Peter Cooper got after he indicated complete transfer. And can I find that in the record? That is in the record. Do you have it on the site for us? What's the appendix? No. It's appendix 738. And it states, at 738, if you look, there's a bottom under the daily account activity which lists the different accounts. It says current beneficiary information. Primary beneficiaries under it not provided. So that is evidence, and this is certainly in front of the district court, and he understood this when he was making his decision about whether or not, and this is the question, did Peter Cooper intend to terminate this account and not have any assets left over to be distributed to Alyssa DeMora, his ex-wife? And in the context of everything, the fact that he got divorced, they had the Marriage Separation Act, and I understand that the legal argument doesn't nullify this, but then he opens up an account at TD Ameritrade. He then goes on the form that needs to be interpreted, what it says is of all assets, and if the depositor indicates he wants all the assets out, that terminates the agreement and closes the account. But all he had to do was check the box beneath and says, if non-transferable assets, sell them. No, it wasn't. No, no, no, no, Your Honor. It wasn't to check the box beneath. Check the box beneath of what he checked. It says, transfer from a brokerage firm. And he had two options. This is a total transfer, in other words, all assets, or this is a partial transfer. If you accept the argument they're making that this was a partial transfer, and that that's what he intended, he never would have checked the full transfer box. What they're doing is they're going to the next page, and you can look at this, it's an appendix 928, and they're saying, if a fund is unable to be held by TD Ameritrade, the transfer thing, and we want us to liquidate it initial here. The fact that he didn't... Why would they give that? That's the problem. Why would they give that option? Because if I understand it, at that moment, if the agreement is canceled, all the tax problem kicks in. This is an odd way to set it up for the benefit of the client, where the client now, you would think, if your theory was right, that the default would be the non-transferral assets will be converted and transferred over. Why pause and say, well, now we'd like to tell you that you've got these assets here that you're going to get disadvantageally taxed on. No, because at the time they filled this out in 2003, nobody knew what the content of the assets were. They know that there could be... The system is set up as a form system. So it's contemplating the situation in which there will be non-transferable assets. But again, we're talking about... On your theory, the way it's designed is by design to terminate the agreement, which I think you can see creates the disadvantage tax situation as to those remaining assets. Why would you do that? But if it creates a disadvantage tax situation, that doesn't... The savings clause in the automatic member provision he talks about only kicks in if there's a... It needs to be amended to comply with an IRS... I'm not talking about the savings provision. I'm just saying, why would a brokerage account be set up to put the client in a position where if they don't check this extra box, they're going to take a tax hit? You would think, if the way you're talking about it makes sense, that when I request a total transfer, that the default would be as the non-transferable assets go ahead and convert them and get rid of them. And if I want that not to happen after you notify me, I would stop it. But I just don't get it. Well, it just seems like a design set up just to make somebody bear a tax hit for no good reason. Well, but that may be a separate issue between the parties. But the way this... I come back to the simple premise here about who is the rightful beneficiary of these assets. And the ultimate question is, what did Peter Cooper intend to do with these assets? And when he indicates on his form that the total transfer of every asset in there, his intent is to transfer them, that terminates the agreement and therefore it terminates the beneficiary designation. And my final point is, Mesereau knew that. The appendix 738 makes it very clear that there was no beneficiary and their internal emails made it clear they understood Peter Cooper intended to terminate the agreement and the beneficiary designation. Let me bring you back to one question. The district court hinged its opinion on finding that once the transfer request is received, the beneficiary designation form goes poof, disappears. So it doesn't exist in the interim between the receipt of the transfer request and the final disposition of the funds. Correct. It seems an odd thing to do, but that's what the district court said. It didn't point to any language in the agreement saying that. And it wasn't clear to me from your brief exactly what clause in the agreement you're relying on to say that the beneficiary designation form was a nullity during the interregnum between transfer request and distribution. Well, I think the way the district court got there and it makes perfect sense is that the agreement is terminated. The beneficiary designation, which exists only within the context of that agreement, is also terminated. So you can't have a beneficiary designation survive a termination agreement even though there are certain administrative acts that need to take place to carry out the intent of Mr. Cooper to transfer every asset. And in the course of doing that, administrative function after the fact, there were some issues that couldn't allow the full transfer. That doesn't change what he indicated and the two options on that form, full transfer or partial transfer. He did not hit partial transfer. And so by indicating full transfer, the agreement, including the beneficiary designation, goes away. And Mesereau knew this simply because every subsequent account statement they sent to Peter Cooper after he had indicated this said that there was no beneficiary designated. None provided. So they knew that there was a fundamental change in how this account was set up and held there. And if Your Honors, just I don't think you should, I think this decision should be upheld and I think that the rationale based on the preparing language of this agreement and demonstrating the intent of Mr. Cooper to terminate this, if you think that that is a question, then it becomes a question of fact as to what was his intent. And then this is not something that can be decided in their favor on the papers given what he has indicated there. So if Your Honors are not inclined to affirm that, this goes back, and we have a trial as to what did Peter Cooper intend as to these assets. This is not a simple, we decide this case. Can I ask you about that? Why does the intent matter? I thought under the agreement it's simply whether there's a request to transfer all assets. That's what terminates it. Well, I think what you're getting at is or is not, why would the intention of the person making the request matter for that? Because I think you end up with there's an ambiguity as to what did he check here and what does this box say, which he says is a total transfer. But why would his subjective intention about what he was requesting be the key to determining whether the agreement terminates as opposed to simply whether objectively what was manifest to the de mesuro constitutes a request to transfer? Because his indication here is that if he did an actual complete transfer but in his mind said I'm glad I effected that partial transfer that couldn't possibly save it from being a request for a total transfer. You think it could? Well, I think it becomes into the context of the agreement what did the parties understand and what does the language in this form which again, the form was signed back in 2003 under different circumstances when he was married and it says this agreement terminates if all the assets are directed to come out of it which is what he did and that was the option he pressed on the form as opposed to hitting partial. I mean, it couldn't be any more clear than that that he says all of the assets in this agreement go. The fact that subsequent to that there was some administrative issue with regard to whether they could go or not has no impact as to whether the operation of that clause saying all assets are to be transferred terminates the agreement and the beneficiary designation. Thank you. Mr. Regan, we'll give you another minute or two because we gave Mr. Carroll four extra minutes. In that minute would you discuss his argument that all the forms which he was sent thereafter indicated no beneficiary? I would disagree that they indicate no beneficiary. What's stated on the form is not provided. I refer the court to the testimony of Lindy Brooks which is in the summary judgment record. She was the account representative who was deposed by the plaintiff in the case. She described what happened and I would also refer the court to the actual account statements that are in the record I believe starting at page 596. These assets, the non-transferable assets never actually left the account. What Lindy Brooks' testimony will tell you and what the record will support is that upon receipt of the notification there was a hold put on the account. That is what Ms. Brooks described as what open and close meant. Once the account received the notification for the transfer from TD Ameritrade the account which is managed in Chicago put a hold or the account was closed to further transactions during the reconciliation period for the automated transfer of the accounts, of the securities. During that period of time following the ACAT's transfer requirements under the FINRA rule which is adopted under the SEC regulations a series of securities were identified known to Peter that could not be transferred. Again, Ms. Brooks talks about conversations she had with Mr. Cooper about these assets and he said can I keep them there? Our argument is even if they were transferred I mean a termination we say there isn't that was an affirmation of the custodial agreement. So all you can get from the form which is what Wendy Brooks said on these statements is it says not provided. It doesn't mean there was or wasn't a beneficiary nor does it change the contract terms which were in place that the judge starts filing in place. I understand one thing which is your position is that the beneficiary form was still in place, correct? Yes. So why is she saying not provided? Her testimony was that when the account was managed in Chicago somehow an accident was made in coding the account so that all it said was not provided and her testimony was she could not interpret what not provided meant. But that fundamentally did not change the account documents and the appellee here does not challenge the ruling by the district court judge that the beneficiary designation form continued through the time of the so-called transfer form to TD America Trades so any argument that the beneficiary designation form did not operate under the custodial agreement if there ever was one has been waived it hasn't been brought forward which means the beneficiary designation form as a matter of contract law in this case was in effect at the time Peter Cooper died. That's our interpretation because the IRA custodial agreement had not terminated. Can I just one last question on that I'm sorry but the there's two possible grounds that have been flushed out here one is that the agreement terminated but the beneficiary provision survived. Right? I phrase it a little differently if I may your honor the agreement terminates and upon that time the agreement describes how the termination is to be effected. Okay. And then the other argument is it never terminated. Yes. Both of those result in the funds going to Cooper. In the first draft of my argument it was it doesn't matter which way you go because you wind up at the same place. I just want to make sure that as a real matter that's right because won't the tax consequences be different between those two? No because the benefit because and this goes back to the tax saving clause and the overarching purpose it remains in its status as an IRA custodial agreement it does not become a distribution to Peter Cooper or his estate. Under either approach. Under either approach it goes to his beneficiary and that is why article 4 of the custodial agreement is so important. So only if the beneficiary provision terminates that there's a tax problem. That's right. And then where does it go? And so if you follow those points and the overarching planning within this document is whether it did or did not terminate the ultimate distribution of the funds remains the same and it is to Elisa and I would I would ask the court just on the question of if you're looking at the assets and what happened with the assets and part of your analysis includes tracing where they went or what happened to them at the time the transfer request came in please look at the account statements. You will see at no point were the non-transferable assets ever removed from the account. They're always there. There was no transfer out from that account consistent with the reconciliation procedures that Randy Brooks' deposition referred to. Thank you.